## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
**Bridgeport Division**

IN RE:
WILLIAM DAVID PETERS, III
*DBA BROWNING AND CHANDLER, LLC*
VICTORIA BROWNING PETERS
     DEBTORS

: CHAPTER 11
: CASE NO. 18-50125

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR
J.P. MORGAN MORTGAGE TRUST 2006-A2
     MOVANT
VS.
WILLIAM DAVID PETERS, III
*DBA BROWNING AND CHANDLER, LLC*
VICTORIA BROWNING PETERS
     DEBTORS

: June 14, 2018

<u>NOTICE OF CONTESTED MATTER RESPONSE DEADLINE</u>

     U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage Trust 2006-A2 (the

"Movant") has filed a Motion for Relief from Automatic Stay, (the "Contested Matter") in the

above-captioned case.  Notice is hereby given that any response to the Contested Matter must be

filed with the Court no later than **June 28, 2018**, in accordance with Federal Rules

of Bankruptcy Procedure 2002(a) and 9014*.   In the absence of a timely filed response, the

proposed order in the Contested Matter ***may*** enter without further notice and hearing, see, 11

U.S.C. §102(1).

Dated:   6/14/2018               By:  */s/Linda  St. Pierre*
                                     Linda J. St. Pierre, Esq.
                                     McCalla Raymer Leibert Pierce, LLC
                                   50 Weston Street
                                   Hartford, CT 06120
                                   Fed Bar No. CT 22287

*Pursuant to Federal Rule of Bankruptcy Procedure 9006(f), if service is made by mail, three
days are added after the response date set in this notice.

**THIS FIRM IS A DEBT COLLECTOR. WE MAY BE ATTEMPTING TO COLLECT A DEBT AND ANY
INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. AT THIS TIME, WE ARE ONLY
SEEKING TO PROCEED AGAINST THE PROPERTY.  IN THE EVENT OF A BANKRUPTCY
DISCHARGE, NO DEFICIENCY JUDGMENT WILL BE ASSESSED AGAINST THE BORROWER**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**Bridgeport Division**

IN RE:
WILLIAM DAVID PETERS, III
*DBA BROWNING AND CHANDLER, LLC*
VICTORIA BROWNING PETERS
     DEBTORS

    : CHAPTER 11
    : CASE NO. 18-50125

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR
J.P. MORGAN MORTGAGE TRUST 2006-A2
     MOVANT
VS.
WILLIAM DAVID PETERS, III
*DBA BROWNING AND CHANDLER, LLC*
VICTORIA BROWNING PETERS
     DEBTORS

    : June 14, 2018

## NOTICE OF CONTESTED MATTER RESPONSE DEADLINE CERTIFICATION

        The undersigned hereby certifies that on the 14 day of June, 2018 in accordance with applicable law, I served the following documents upon the entities listed below (constituting all entities entitled to notice):

    (1)    a copy of the pleading initiating the contested matter, specifically:  Motion for Relief from Stay;
    (2)    a copy of the Proposed Order associated therewith; and

    (3)    a Notice of Contested Matter Response Deadline

William David Peters, III
32 Stanton Road
Darien, CT 06820
(Debtor)

Victoria Browning Peters
32 Stanton Road
Darien, CT 06820
(Debtor)

Byron Paul Yost                  *(served via ECF Notification)*
Law Office of Byron Paul Yost
46 Edgewood St., Unit 72
Stafford Springs, CT 06076
(Debtors' Attorney)

U. S. Trustee                    *(served via ECF Notification)*
Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510
(U.S. Trustee)

*Largest 20 unsecured creditors:*

Navient Dept of Education
P.O. Box 9500
Wilkes Barre, PA 18773

Navient Federal Plus Loan
P.O. Box 9500
Wilkes Barre, PA 18773

Navient Solutions
P.O. Box 9500
Wilkes Barre, PA 18773

Viking Funding
102 Jerico Turnpike
Floral Park, NY 11001

Ury and Moskow
883 Black Rock Turnpile
#2
Fairfield, CT 06825

Stamford Hospital
1 Hospital Place
Stamford, Ct 06902

Great Lakes
PO Box 7860
Madison, WI 53707

American Express
PO Box 360001
Ft. Lauderdale, FL 33336

Portfoili Recovery Citi
PO Box 12914
Norfolk, VA 23541

Citizens Bank/Schelee & Stillman
50 Tower Office Park
Worburn, MA 01801
All Tran Financial LP
PO Box 610
Sulk Rapids, MN 56379

/s/Linda  St. Pierre
Linda J. St. Pierre, Esq.
McCalla Raymer Leibert Pierce, LLC
50 Weston Street
Hartford, CT 06120
Fed Bar No. CT 22287

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
### Bridgeport Division

IN RE:
WILLIAM DAVID PETERS, III
*DBA BROWNING AND CHANDLER, LLC*
VICTORIA BROWNING PETERS
     DEBTORS

:  CHAPTER 11
:  CASE NO. 18-50125

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR
J.P. MORGAN MORTGAGE TRUST 2006-A2
     MOVANT
VS.
WILLIAM DAVID PETERS, III
*DBA BROWNING AND CHANDLER, LLC*
VICTORIA BROWNING PETERS
     DEBTORS

:  June 14, 2018

PROPOSED ORDER GRANTING U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR J.P. MORGAN MORTGAGE TRUST 2006-A2 RELIEF FROM STAY

After notice and a hearing, see Bankruptcy Code Section 102(1), on U.S. Bank

National Association, as Trustee for J.P. Morgan Mortgage Trust 2006-A2  (hereafter the

"Movant") Motion for Relief from Stay, (hereafter, the "Motion"), RE: ECF NO._____.

**IT IS HEREBY ORDERED** that the Motion is Granted - the Automatic Stay of

11 U.S.C. § 362(a) is modified to permit the Movant and/or its successors and assigns to

commence and/or continue and prosecute to resolution a foreclosure action and otherwise

exercise its rights, if any with respect to real property known as 32 Stanton Rd, Darien,

CT 06820 in accordance with applicable state law;

**IT IS FURTHER ORDERED** that the 14 day stay of Fed.R.Bankr.P. 4001(a)(3)

is not applicable and the Movant may immediately enforce and implement this Order.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**Bridgeport Division**

IN RE:
WILLIAM DAVID PETERS, III
*DBA BROWNING AND CHANDLER, LLC*
VICTORIA BROWNING PETERS
    DEBTORS

: CHAPTER 11
: CASE NO. 18-50125

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR
J.P. MORGAN MORTGAGE TRUST 2006-A2
    MOVANT
VS.
WILLIAM DAVID PETERS, III
*DBA BROWNING AND CHANDLER, LLC*
VICTORIA BROWNING PETERS
    DEBTORS

: June 14, 2018

**MOTION FOR RELIEF FROM AUTOMATIC STAY**
**(REAL PROPERTY) OR ALTERNATIVELY REQUEST FOR MONTHLY ADEQUATE**
**PROTECTION PAYMENTS**

The undersigned Movant, U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage

Trust 2006-A2 ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from

the automatic stay with respect to certain real property of William David Peters, III dba

Browning and Chandler, LLC and Victoria Browning Peters ("Debtors") having an address of 32

Stanton Rd, Darien, CT 06820 ("Property") or in the alternative a request for monthly adequate

protection payments.   In further support of this Motion, Movant respectfully states:

1. The Debtors, William D. Peters, III and  Victoria B. Peters, have executed and

   delivered or are otherwise obligated with respect to that certain promissory note in the

   original principal amount of $750,000.00 ("Note").  A copy of the Note is attached

   hereto as Exhibit "A".  Movant is an entity entitled to enforce the Note and the

   Mortgage (defined below).

2. Pursuant to that certain Open-End Mortgage Deed ("Mortgage"), all obligations

   (collectively, the "Obligations") of the Debtors under and with respect to the Note

and the Mortgage are secured by the Property.  A copy of the Mortgage is attached

hereto as Exhibit "B".

3.    The Mortgage has been assigned to the Movant pursuant to that certain assignment or

assignment of mortgages, a copy of which is attached hereto as Exhibit "C".

4.    Select Portfolio Servicing, Inc. services the loan on the Property referenced in this

Motion.  In the event the automatic stay in this case is lifted/set aside, this case

dismisses, and/or the Debtor obtains a discharge and a foreclosure action is

commenced on the mortgaged property, the foreclosure will be conducted in the name

of U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage Trust 2006-

A2.  At the time of the filing of this Motion, said entity, directly or through an agent,

has possession of the promissory note.  The Promissory note is duly endorsed into

said entity. The Movant therefore has standing.

5.    As of April 25, 2018, the Debtor is contractually due for June 1, 2013.

6.    The estimated market value of the Property is $1,300,000.00 pursuant to an Order

granting Motion to Open Judgment and Extend Sale Date dated January 2, 2018

attached hereto as "Exhibit D".  The amount of the Movant's debt as of April 25,

2018 is approximately $846,710.18.

7.    Pursuant to Debtors' Schedule D, the encumbrances on the Property listed in the

Schedules or otherwise known, excluding the encumbrance granted to Movant as set

forth above, totals $947,769.00, attached hereto as "Exhibit E".  **These subsequent

liens which are secured by the Property eliminate any available equity in the

Property.**

8.    The Schedules of the Debtors list an exemption for the Property, in the amount of

$1,340,000.00, attached hereto as "Exhibit F".

9.  A foreclosure action was commenced on December 17, 2013.  See "Exhibit G" –
    Foreclosure Docket.  A Judgment of Foreclosure by Sale entered on June 6, 2016
    attached hereto as "Exhibit H".  Subsequent to entry of that Judgment, the Debtors
    filed a Petition for Re-inclusion of Foreclosure Mediation which was granted on
    November 10, 2014 attached hereto as "Exhibit I".  As evidenced in "Exhibit G",
    thereafter, the foreclosure mediation continued until October 30, 2015 at which point
    mediation was terminated.  On October 17, 2016, the Debtors filed a Motion to Open
    Judgment and Extend the Sale Date which was granted on October 24, 2016 which
    set a new sale date of March 4, 2017 attached hereto as "Exhibit J".  On October 21,
    2016, the Debtors filed a Petition for Re-inclusion of Foreclosure Mediation which
    was denied on November 28, 2016 but did set an additional mediation to occur
    between December 5, 2016 and December 9, 2016 attached hereto as "Exhibit K".
    Orders entered granting six Motions to Open Judgment and Extend Sale Date filed by
    the Debtors.  These Orders entered on October 24, 2016, February 21, 2017, May 8,
    2017, July 10, 2017, October 16, 2017, and January 2, 2018.  See attached "Exhibit
    D" and "Exhibit L".  The final Order granting the Debtor's Motion to Open Judgment
    and Extend Sale Date which is dated January 2, 2018 set a sale date of March 10,
    2018.

10. The Debtors current Chapter 11 case was filed on February 2, 2018 which was
    approximately one month prior to the scheduled sale date.

11. The Movant maintains that although the State Court set a sale date, there is no equity
    for the Debtors or this estate in the subject property by virtue of the existing
    subsequent liens behind the Movant's lien as identified on the Debtors Schedules.

12. As evidenced in "Exhibit D", the Debtors have had a period of over 4 years during the underlying foreclosure action to reorganize their debt with the Movant, including extensive mediation, but was unable to do so.

13. The Debtors filed Schedule I and J shows income of $9,240.00 and expenses of $9,752.00, leaving a negative net income of -$512.00.  See attached "Exhibit M".  As indicated in Debtors Schedule J, the Debtors stated expenses assumes a debt service payment to the Movant of $3,688.00 which is inaccurate.  The last payment received by the Movant was applied on May 1, 2013.  The Debtors would be required to make at minimum debt service payment of $6,550.70 if in fact the Movant was to agree to a reamortization of its claim in this Chapter 11 case.  This minimum debt service of $6,550.70 assumes a reamortization of an approximately debt of $846,710.18 over 25 years at a fixed interest rate of 5.25% (P&I $5,073.89), plus monthly minimum escrow of $1,476.81 for taxes and insurance.  Based upon the income stated in Debtors Schedule I of $9,240.00, the minimum debt service of $6,550.70 together with the additional expenses stated in Debtors Schedule J would essentially leave a negative net income of -$3,374.70.  See "Exhibit M" and "N".  This clearly shows unfeasibility.  Based upon the length of time and opportunities provided to the Debtors during the underlying foreclosure, including being afforded mediation and numerous extensions of the sale dates, the Movant will not consent to a Plan of Reorganization in a Chapter 11 case that is unfeasible on its face.  The Movant maintains that cause exists as indicated above and below for this court to grant relief from stay.

14. Pursuant to 11 U.S.C. § 362(d)(1), cause exists for relief from the automatic stay for the following reasons:

a) Movant's interest in the Property is not adequately protected and Movant's interest in the collateral is diminishing by the day.  Payments are not being made to Movant sufficient to protect Movant's interest.

15. Pursuant to 11 U.S.C. § 362(d)(2)(A), **Debtors** have no equity in the Property by virtue of both the Movant's claim and the subsequent liens on the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

16. That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived because: a Judgment of Strict Foreclosure first entered on June 6, 2016.


WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1. Relief from the stay allowing Movant and any successors or assign to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3. For such other relief as the Court deems proper.

Dated at Hartford, Connecticut this 14 day of June , 2018.


By:  */s/ Linda  St. Pierre*
Linda J. St. Pierre, Esq.
McCalla Raymer Leibert Pierce, LLC
50 Weston Street
Hartford, CT 06120
Fed Bar No. CT 22287


**THIS FIRM IS A DEBT COLLECTOR. WE MAY BE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. AT THIS TIME, WE ARE ONLY SEEKING TO PROCEED AGAINST THE PROPERTY.  IN THE EVENT OF A BANKRUPTCY DISCHARGE, NO DEFICIENCY JUDGMENT WILL BE ASSESSED AGAINST THE BORROWER.**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF CONNECTICUT
### Bridgeport Division

| | |
|---|---|
| In re:<br><br>WILLIAM DAVID PETERS, III<br>*DBA BROWNING AND CHANDLER, LLC*<br>VICTORIA BROWNING PETERS<br>    Debtors. | Chapter 11<br><br>Case No. 18-50125 |

## DECLARATION IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

I, Randall W. Holland , declare under penalty of perjury as follows:

1.      I am a/an Document Control Officer of Select Portfolio Servicing, Inc.

("Servicer") and am authorized to sign this declaration on behalf of Servicer, as servicing agent

for U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage Trust 2006-A2.  This

declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed

contemporaneously herewith.

2.      As part of my job responsibilities for Servicer, I have personal knowledge of and

am familiar with the types of records maintained by Servicer in connection with the loan that is

the subject of the Motion (the "Loan") and the procedures for creating those types of records.  I

have access to and have reviewed the books, records and files of Servicer that pertain to the Loan

and extensions of credit given to Debtor(s) concerning the property securing such Loan.

3.      The information in this declaration is taken from Servicer business records

regarding the Loan.  The records are: (a) made at or near the time of the occurrence of the

matters recorded by persons with personal knowledge of the information in the business record,

or from information transmitted by persons with personal knowledge; (b) kept in the course of

Servicer regularly conducted business activities; and (c) it is the regular practice of Servicer to make such records.

4.      Movant is the holder of, and, directly or through an Agent, has possession of the original endorsed Note and/or Mortgage Deed of Trust.

5.      The Debtors are otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note").  Pursuant to that certain Mortgage, deed of trust, or security deed as applicable and as referenced in the Motion ("Mortgage"), all obligations of the Debtor(s) under and with respect to the Note and the Mortgage are secured by the property referenced in the Motion.

6.      As of April 25, 2018, there are one or more defaults in paying pre-petition and/or post-petition amounts due with respect to the Note.

7.      As of April 25, 2018, the approximate total debt owing under the Note is $846,710.18.

8.      As of April 25, 2018, the contractual due date is June 1, 2013.  To date, payments to satisfy the contractual delinquency have not been made.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of _____JUNE_____, 2018.

04/08/2018

_____
Name: BRANDALL W. HOLLAND
Title: DOCUMENT CONTROL OFFICER
SELECT PORTFOLIO SERVICING, INC.
3217 S. DECKER LAKE DR.
SALT LAKE CITY, UT 84119

**Exhibit A**

# FIXED/ADJUSTABLE RATE NOTE
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)-Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

May 6, 2004                    Greenwich                         CT
    [Date]                            [City]                              [State]

         32 Stanton Rd
         Darien, CT  06820
            [Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 750,000.00         (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
Chase Manhattan Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.250                  %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on July 1st, 2004

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 1, 2034                    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at Chase Manhattan Mortgage Corporation
343 Thornall Street, Edison, NJ  08837
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 3,689.55              . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of June, 2009                    , and the adjustable interest rate I will pay may change on that day every 12th month thereafter.

 XED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR - Single Family - Fannie Mae Uniform Instrument



**168N** (0210)                    **Form 3528 6/01**
    VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 5                    Initials: 

The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and one-quarter percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.250 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 9.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.



Form 3528 6/01

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:



VMP-168N (0210)

Page 3 of 5

Form 3528 6/01

Initials: _____

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Form 3528 6/01

Initials: _____

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
-Borrower

William D. Peters III

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Victoria B. Peters

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Pay to the Order of
Without Recourse
Chase Manhattan Mortgage Corporation

BY
SHELIA LONG/ASST. SECRETARY

[Sign Original Only]



-168N (0210)

Page 5 of 5

Form 3528 6/01

Exhibit B

Return To:
Chase Manhattan Mortgage Corporation
Final Documents
1500 N. 19th Street 6 North
Monroe, LA 71201

Prepared By:

───────────────[Space Above This Line For Recording Data]───────────────

# OPEN-END MORTGAGE DEED

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16..

**(A) "Security Instrument"** means this document, which is dated May 6, 2004
together with all Riders to this document.
**(B) "Borrower"** is
William D. Peters III
Victoria B. Peters

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is
Chase Manhattan Mortgage Corporation
Lender is a  corporation
organized and existing under the laws of The State of New Jersey

CONNECTICUT-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3007 1/01

-6(CT) (0005)
Page 1 of 14          Initials: 
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is
343 Thornall Street, Edison, NJ 08837
Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated May 6, 2004
The Note states that Borrower owes Lender
Seven hundred fifty thousand and 00/100                                        **Dollars**
(U.S. $ 750,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than June 1, 2034
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

- [X] Adjustable Rate Rider   [ ] Condominium Rider   [ ] Second Home Rider
- [ ] Balloon Rider   [ ] Planned Unit Development Rider   [ ] 1-4 Family Rider
- [ ] VA Rider   [ ] Biweekly Payment Rider   [ ] Other(s) [specify]

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.



**(P)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to Lender and Lender's successors and assigns, the following described property located in the COUNTY                        of FAIRFIELD                        :
           [Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]

See attached Schedule A

Parcel ID Number: ▮▮▮▮              which currently has the address of
32 Stanton Rd                                     [Street]
Darien                        [City] , Connecticut 06820        [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.



-6(CT) (0005)              Page 3 of 14        Initials: ▮▮▮        Form 3007   1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

VOL. **1174** PAGE **751**

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the





VMP®-6(CT) (0005)          Page 5 of 14          Initials: _____          Form 3007   1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

 

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



VOL. **1174** PAGE **753**

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

 

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law: These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.



VOL. **1174** PAGE **755**

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6(CT) (0005)                    Page 10 of 14          Initials _____          Form 3007  1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



-6(CT) (0005)

Page 11 of 14

Initials: ___

Form 3007   1/01

VOL. **1174** PAGE ⎯ **757**

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

**25. Future Advances.** Lender is specifically permitted, at its option and in its discretion, to make additional loans and future advances under this Security Instrument as contemplated by Section 49-2(c) of the Connecticut General Statutes, and shall have all rights, powers and protections allowed thereunder.



-6(CT) (0005)

Page 13 of 14

Initials 

Form 3007   1/01

VOL. **1174** PAGE **759**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____

Richard J. Mayen

_____  _____ (Seal)
William D. Peters III                              -Borrower

_____

Virginia Simoes

_____  _____ (Seal)
Victoria B. Peters                                   -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                                  -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                                  -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                                  -Borrower

STATE OF CONNECTICUT, Fairfied                    County ss: Greenwich

The foregoing instrument was acknowledged before me this May 6, 2004
by
William D. Peters III
Victoria B. Peters

My Commission Expires:

_____

Notary Public

Commissioner of Superior.

# FIXED/ADJUSTABLE RATE RIDER
**(LIBOR One-Year Index (As Published In *The Wall Street Journal*)- Rate Caps)**

THIS FIXED/ADJUSTABLE RATE RIDER is made this 6th day of May, 2004 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
Chase Manhattan Mortgage Corporation

("Lender") of the same date and covering the property described in the Security Instrument and located at:
32 Stanton Rd
Darien, CT 06820

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of 4.250 %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
June, 2009 , and the adjustable interest rate I will pay may change on that
day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable
interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR- Single Family -
Fannie Mae Uniform Instrument**

-168R (0108)        Form 3187 6/01
Page 1 of 4        Initials:
VMP MORTGAGE FORMS - (800)521-7291

VOL. **1174** PAGE **761**

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and one-quarter                    percentage points ( 2.250                %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.250          % or less than   2.250                %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than     9.250             %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:



®-168R (0108)
®                                    Page 2 of 4                    Initials:                    Form 3187 6/01

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all



VOL. **1174** PAGE **763**

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)                    _____ (Seal)
-Borrower        William D. Peters III                    -Borrower

_____ (Seal)                    _____ (Seal)
-Borrower        Victoria B. Peters                    -Borrower

_____ (Seal)                    _____ (Seal)
-Borrower                                                -Borrower

_____ (Seal)                    _____ (Seal)
-Borrower                                                -Borrower



-168R (0108)                    Page 4 of 4                    Form 3187 6/01

# COMMONWEALTH LAND TITLE INSURANCE COMPANY
## SCHEDULE C (Description)

**LOAN POLICY NUMBER:** ███████████

ALL THAT CERTAIN piece, parcel or tract of land, together with the buildings and improvements thereon, situated at Noroton Heights, so-called, in the Town of Darien, County of Fairfield and State of Connecticut, containing in are .867 acres, more or less, bounded and described as follows:

NORTHERLY:   150 feet by Stanton Road;

EASTERLY:   253.54 feet by land now or formerly of John E. Herbert and Kathleen W. Herbert;

SOUTHERLY:   250.04 feet by land now or formerly of August R. Miller and Ella Miller; and

WESTERLY:   249.96 feet by land now or formerly of Jonathan Towle and Ann J. Towle.

Said premises are also designated as Lot Number 8 on Darien Map Number 2315 on file in the office of the Town Clerk of said Town of Darien.

Received for record MAY 1 1 2004 @ 2:27pm

Attest *Donna E. Rayzewski*
TOWN CLERK

2524

RECEIVED FOR RECORD
2:27 ℓ _____ M Recorded in
MAY 1 1 2004
Vol _1174_ Page _246_
DARIEN LAND RECORDS
By _Donna E. Rupenski_
Town Clerk

Exhibit C

After Recordation Return To:
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: ▮▮▮▮▮

## ASSIGNMENT OF MORTGAGE

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO CHASE HOME FINANCE LLC SUCCESSOR BY MERGER TO CHASE MANHATTAN MORTGAGE CORPORATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203, (ASSIGNOR),** by these presents does convey, grant, sell, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **U.S BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR J.P. MORGAN MORTGAGE TRUST 2006-A2, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203** (866)756-8747, **ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said Mortgage bearing the date 05/06/2004, made by **WILLIAM D. PETERS III AND VICTORIA B. PETERS** to **CHASE MANHATTAN MORTGAGE CORPORATION,** and recorded in the Land Records of the Town of DARIEN, State of Connecticut, in Volume 1174, at Page 746, to which reference may be had.

**IN WITNESS WHEREOF, JPMORGAN CHASE BANK, NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO CHASE HOME FINANCE LLC SUCCESSOR BY MERGER TO CHASE MANHATTAN MORTGAGE CORPORATION** has hereunto set its hand on _06 / 06_ /2012 (MM/DD/YYYY).

By_____

Ashley Clegg
VICE PRESIDENT

Signed and Delivered in the presence of:

_Erin Auger_____ Witness

_____ Witness

STATE OF LOUISIANA   PARISH OF OUACHITA
On _06 / 06_ /2012 (MM/DD/YYYY), before me appeared _Ashley Clegg_____, to me personally known, who did say that he/she/they is/are the VICE PRESIDENT of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO CHASE HOME FINANCE LLC SUCCESSOR BY MERGER TO CHASE MANHATTAN MORTGAGE CORPORATION and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_Helen P Tubbs_____
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

HELEN P. TUBBS, NOTARY PUBLIC
MOREHOUSE, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 40392

**Document Prepared By:** E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

Received for record   JUN 25 2012 @ 10:22 AM

Attest   _Donna E. Rapaski_____
TOWN CLERK

RECEIVED FOR RECORD

10:22 A.M. Recorded In

Vol. 1460  Page 495

DARIEN LAND RECORDS

By Donna E. Rajewski

Town Clerk

JUN 25 2012

Exhibit D

ORDER    425586

DOCKET NO: FSTCV136020732S                     SUPERIOR COURT

US BANK NATIONAL ASSOCIATION AS              JUDICIAL DISTRICT OF STAMFORD
TRUSTEE                                             AT STAMFORD
  V.
PETERS, III, WILLIAM D Et Al                  1/2/2018


## ORDER


ORDER REGARDING:
12/07/2017 185.00 MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE

The foregoing, having been considered by the Court, is hereby:

ORDER: GRANTED

Notice of Judgment of Foreclosure by Sale (as opened and modified)
Property Address: 32 Stanton Road Darien, CT 06820
The Committee is ordered to upload pictures of the property on the Judicial website and include a
picture of the property in the newspaper ad. The appraiser is ordered to do an interior appraisal of the
property.

Judgment of Foreclosure by Sale is hereby entered as follows:
Debt: $764,321.72
Attorney Fees: $3,900.00
Total: $768,221.72
Appraisal Fee: $600.00
Title Search Fee: $225.00
Fair Market Value: $1,300,000.00

The Sale Date is: Saturday, March 10, 2018
Terms of the Sale: 12:00 noon on the premises.
Deposit Amount: $130,000.00 Deposit to be paid by bank or certified check only.
Committee Appointed: DORIS KNAPP, 264 CHEESE SPRING ROAD, WILTON, CT 06897
Ordered in accordance with the Statewide Standing Orders(JD-CV-79) and Uniform Procedures for
Foreclosure by Sale Matters(JD-CV-81).
Independent Appraiser: Rome Lillicraf, Rome Home Services, LLC., 10 Edgewood Ave, Trumbull, CT
06611
Return of Appraisal by: Wednesday, February 28, 2018
Deposit not required if Plaintiff is the successful bidder. The Plaintiff may submit a bid via fax.
No fees or expenses prior to: Wednesday, January 24, 2018
Sign to be posted no earlier than : Thursday, February 08, 2018
Sign to be posted no later than : Sunday, February 18, 2018

Publication in Stamford Advocate on: 3/2/2018, 3/9/2018
Ad to be posted on Judicial Website.
Plaintiff's Atty: BENDETT & MCHUGH PC, 270 FARMINGTON AVENUE, SUITE 151,
FARMINGTON, CT 06032
Copies sent Friday, January 05, 2018 to:
BENDETT & MCHUGH PC; SETH J ARNOWITZ; GOLDMAN GRUDER & WOODS LLC, DORIS
KNAPP (Committee), Rome Lillicraf (Appraiser)

Judicial Notice (JDNO) was sent regarding this order.

425586

Judge: KEVIN A RANDOLPH
Processed by: Amy Melashvili

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | William David Peters III |
| | First Name   Middle Name   Last Name |
| Debtor 2 | Victoria Browning Peters |
| (Spouse, if filing) | First Name   Middle Name   Last Name |

United States Bankruptcy Court for the: _____ District of C T

Case number _____
(if known)

Exhibit E

☐ Check if this is an amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property       12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. **Do any creditors have claims secured by your property?**
   ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
   ☒ Yes. Fill in all of the information below.

## Part 1:   List All Secured Claims

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A Amount of claim Do not deduct the value of collateral. | Column B Value of collateral that supports this claim | Column C Unsecured portion If any |
|---|---|---|---|

**2.1** Richard Browning/Volt
Creditor's Name

90 Grove St #209
Number   Street

Ridgefield Ct 06877
City   State   ZIP Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☒ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

Date debt was incurred 2/17

Describe the property that secures the claim:
32 Stanton Rd
Darien Ct 06820

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☒ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☒ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number ___ ___ ___ ___

$161,734   $ 0   $161,734

**2.2** SPS
Creditor's Name

PO BOX 65250
Number   Street

Salt Lake City Utah 84165
City   State   ZIP Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☒ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

Date debt was incurred

Describe the property that secures the claim:
32 Stanton Rd
Darien Ct 06820

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☒ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☒ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number 6930

$841,762   $1,340,000   0

Add the dollar value of your entries in Column A on this page. Write that number here: $1,003,496

Debtor 1 ___William David Peters III___
    First Name    Middle Name    Last Name

Case number (if known) _____

| Part 1: | **Additional Page** After listing any entries on this page, number them beginning with 2.3, followed by 2.4, and so forth. | Column A **Amount of claim** Do not deduct the value of collateral. | Column B **Value of collateral that supports this claim** | Column C **Unsecured portion** If any |
|---|---|---|---|---|

**2.3** Mike Gagliardi
Creditor's Name

3424 Runaway Lane
Number  Street

Naples FL
City  State

34114
ZIP Code

Describe the property that secures the claim:

32 Stanton Rd
Danen Ct 06820

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☑ Unliquidated
- ☐ Disputed

**Who owes the debt?** Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred 10/2015

**Nature of lien.** Check all that apply.
- ☑ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) _____

Last 4 digits of account number ___ ___ ___ ___

$ 110,000    $ 0    $ 110,00

---

**2.4** ManaT bank
Creditor's Name

PO Box 62986
Number  Street

Baltimore MD 21264
City  State  ZIP Code

Describe the property that secures the claim:

32 Stanton Rd
Danen Ct 06820

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☑ Unliquidated
- ☐ Disputed

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred _____

**Nature of lien.** Check all that apply.
- ☑ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) _____

Last 4 digits of account number _4_ _9_ _9_ _8_

$ 667,500    $ 498,238    $ 169,262

---

**2.5** Renolds Rowella
Creditor's Name

90 Grove St
Number  Street

Ridgefield CT
City  State  ZIP Code

Describe the property that secures the claim:

32 Stanton Rd
Danen Ct 06820

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred _____

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) _____

Last 4 digits of account number ___ ___ ___ ___

$ 5,000    $ 0    $ 5,000

---

Add the dollar value of your entries in Column A on this page. Write that number here: $ 782,500

If this is the last page of your form, add the dollar value totals from all pages. Write that number here: $ _____

CLAIM     VALUE of Collateral     UNSECURED

|2.16|

A         B          C
3535      0          3,535

Discover Card
PO Box 6103
Carol Stream
    ILL
      60917

| 32 Stanton |
| Darien CT |

☑ unliquified
☑ mortgage

☑ debtor 1+2

TOTAL   DOLLAR VALUE  SECURED CREDITORS  $ 1,789,531

3 of 4

**Fill in this information to identify your case:**

Debtor 1    *William David Peters III*
             First Name    Middle Name    Last Name

Debtor 2    *Victoria Brown Peters*
(Spouse, if filing)    First Name    Middle Name    Last Name

United States Bankruptcy Court for the: _____ District of *CT*

Case number _____
(If known)

Exhibit F

☐ Check if this is an
  amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt                    04/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

| Part 1: | Identify the Property You Claim as Exempt |
|---|---|

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☒ You are claiming state and federal nonbankruptcy exemptions. 11 U.S.C. § 522(b)(3)
   ☐ You are claiming federal exemptions. 11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption.* | |
| Brief description: *32 Stanton Rd Darien CT 06820* | $ *1,340,000* | ☐ $ _____ <br> ☒ 100% of fair market value, up to any applicable statutory limit | _____ |
| Line from *Schedule A/B*: *1.1* | | | |
| Brief description: _____ | $_____ | ☐ $ _____ <br> ☐ 100% of fair market value, up to any applicable statutory limit | _____ |
| Line from *Schedule A/B*: _____ | | | |
| Brief description: _____ | $_____ | ☐ $ _____ <br> ☐ 100% of fair market value, up to any applicable statutory limit | _____ |
| Line from *Schedule A/B*: _____ | | | |

3. **Are you claiming a homestead exemption of more than $160,375?**
   (Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☐ No
   ☒ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

      ☐ No
      ☒ Yes

EXHIBIT E

 **State of Connecticut Judicial Branch**
## Superior Court Case Look-up

Superior Court Case Look-up
  Civil/Family
  Housing
  Small Claims

Attorney/Firm Juris Number Look up

Case Look-up
  By Party Name
  By Docket Number
  By Attorney/Firm Juris Number
  By Property Address

Short Calendar Look-up
  By Court Location
  By Attorney/Firm Juris Number
  Motion to Seal or Close
  Calendar Notices

Court Events Look-up
  By Date
  By Docket Number
  By Attorney/Firm Juris Number

Pending Foreclosure Sales

Understanding
Display of Case Information

Contact Us



Comments

| · FST-CV13-6020732-S | US BANK NATIONAL ASSOCIATION AS TRUSTEE v. PETERS, III, WILLIAM D Et Al |
|---|---|

Prefix/Suffix: [none]  Case Type: P00    File Date: 12/17/2013    Return Date: 12/24/2013

**Case Detail**   Notices   History   Scheduled Court Dates   E-Services Login   Screen Section Help   ▶
Pending Foreclosure Sales          To receive an email when there is activity on this case, click here.

Information Updated as of: 02/26/2018

| Case Information |
|---|
| Case Type: P00 - Property - Foreclosure |
| Court Location: STAMFORD JD |
| Property Address: 32 Stanton Road, Darien, CT 06820 |
| List Type: No List Type |
| Trial List Claim: |
| Last Action Date: 02/12/2018  (The "last action date" is the date the information was entered in the system) |

| Disposition Information |
|---|
| Disposition Date: |
| Disposition: |
| Judge or Magistrate: |

| Party & Appearance Information |
|---|

| Party | | No Fee Party | Category |
|---|---|---|---|
| **P-01** | **US BANK NATIONAL ASSOCIATION AS TRUSTEE** | | Plaintiff |
| | Attorney: · BENDETT & MCHUGH PC (102892)    File Date: 12/17/2013<br>270 FARMINGTON AVENUE<br>SUITE 151<br>FARMINGTON, CT 06032 | | |
| **D-01** | **WILLIAM D PETERS III** | | Defendant |
| | Attorney: · ARNOWITZ SETH J LAW OFFICES OF LLC (438545) File Date: 06/15/2017<br>733 SUMMER STREET<br>SUITE 302<br>STAMFORD, CT 06901 | | |
| **D-02** | **VICTORIA B PETERS** | | Defendant |
| | Attorney: · ARNOWITZ SETH J LAW OFFICES OF LLC (438545) File Date: 06/15/2017<br>733 SUMMER STREET<br>SUITE 302<br>STAMFORD, CT 06901 | | |
| **D-03** | **HUDSON CITY SAVINGS BANK** | | Defendant |
| | Attorney: · GOLDMAN GRUDER & WOODS LLC (411134)  File Date: 12/18/2013<br>200 CONNECTICUT AVENUE<br>NORWALK, CT 06854 | | |
| **O-01** | **COMMITTEE** | | Committee |
| | Attorney: · DORIS KNAPP (102812)    File Date: 06/13/2016<br>264 CHEESE SPRING ROAD<br>WILTON, CT 06897 | | |

**Viewing Documents on Civil, Housing and Small Claims Cases:**

If there is an · in front of the docket number at the top of this page, then the file is electronic (paperless).

- Documents, court orders and judicial notices in electronic (paperless) civil, housing and small claims cases with a return date on or after January 1, 2014 are available publicly over the internet.* For more information on what you can view in all cases, view the Electronic Access to Court Documents Quick Card.

- For civil cases filed prior to 2014, court orders and judicial notices that are electronic are available publicly over the internet. Orders can be viewed by selecting the link to the order from the list below. Notices can be viewed by clicking the **Notices** tab above and selecting the link.*

- Documents, court orders and judicial notices in an electronic (paperless) file can be viewed at any judicial district courthouse during normal business hours.*

- Pleadings or other documents that are not electronic (paperless) can be viewed only during normal business hours at the Clerk's Office in the Judicial District where the case is located.*

- An Affidavit of Debt is not available publicly over the internet on small claims cases filed before October 16, 2017.*

*Any documents protected by law Or by court order that are Not open to the public cannot be viewed by the public online And can only be viewed in person at the clerk's office where the file is located by those authorized by law or court order to see them.

| Motions / Pleadings / Documents / Case Status |

| Entry No | File Date | Filed By | Description | | Arguable |
|---|---|---|---|---|---|
| | 12/17/2013 | P | SUMMONS | | |
| | 12/17/2013 | P | COMPLAINT | | |
| | 12/17/2013 | P | RETURN OF SERVICE | | |
| | 12/18/2013 | D | APPEARANCE<br>Appearance | | |
| | 12/24/2013 | | APPEARANCE<br>PETERS, III, WILLIAM | | |
| | 12/24/2013 | | APPEARANCE<br>victoria peters | | |
| | 11/10/2014 | D | APPEARANCE<br>Appearance | | |
| | 11/10/2014 | D | APPEARANCE<br>Appearance | | |
| | 06/13/2016 | O | APPEARANCE<br>Appearance | | |
| | 06/15/2017 | D | APPEARANCE<br>Appearance | | |
| 101.00 | 12/18/2013 | P | AFFIDAVIT FEDERAL LOSS MITIGATION PROGRAMS (JD-CL-114) | | No |
| 102.00 | 12/19/2013 | C | FORECLOSURE MEDIATION – ELIGIBLE CASE (NO DOCUMENT) | | No |
| 103.00 | 12/19/2013 | P | FORECLOSURE MEDIATION PLAINTIFF'S COMPLIANCE WITH SERVICE (NO DOCUMENT) | | No |
| 104.00 | 12/19/2013 | C | FORECLOSURE MEDIATION-COMPLIANCE WITH P.A.09-209 (NO DOCUMENT) SEE FORM# JD-CV-109 | | No |
| 105.00 | 12/24/2013 | D | FORECLOSURE MEDIATION REQUEST/CERTIFICATE JD-CV-108<br>victoria b. peters<br>*RESULT*: Order 1/29/2014 BY THE CLERK | | No |
| 105.86 | 01/29/2014 | C | ORDER<br>Premediation scheduled<br>*RESULT*: Order 1/29/2014 BY THE CLERK | | No |
| 106.00 | 12/24/2013 | D | FORECLOSURE MEDIATION REQUEST/CERTIFICATE JD-CV-108<br>PETERS, III, WILLIAM<br>*RESULT*: Order 1/29/2014 BY THE CLERK | | No |
| 106.86 | 01/29/2014 | C | ORDER<br>Premediation scheduled<br>*RESULT*: Order 1/29/2014 BY THE CLERK | | No |
| 107.00 | 03/31/2014 | C | FORECLOSURE MEDIATOR'S PREMEDIATION REPORT | | No |
| 108.00 | 05/05/2014 | P | MOTION FOR CONTINUANCE<br>*RESULT*: Order 5/6/2014 HON DOUGLAS MINTZ | | No |
| 108.86 | 05/06/2014 | C | ORDER<br>*RESULT*: Order 5/6/2014 HON DOUGLAS MINTZ | | No |
| 109.00 | 05/05/2014 | P | FORECLOSURE MEDIATION - MOTION FOR MODIFICATION OF MEDIATION PERIODJD-CV-96 | | No |
| 110.00 | 05/06/2014 | P | WITHDRAWAL OF MOTION | | No |
| 111.00 | 08/08/2014 | C | FORECLOSURE MEDIATION TIME PERIOD EXPIRED | | No |
| 112.00 | 09/16/2014 | P | MOTION FOR DEFAULT-FAILURE TO PLEAD<br>*RESULT*: Granted 10/3/2014 BY THE CLERK | | No |
| 112.86 | 10/03/2014 | C | ORDER<br>*RESULT*: Granted 10/3/2014 BY THE CLERK | | No |
| 113.00 | 09/16/2014 | P | DEMAND FOR DISCLOSURE OF DEFENSE PB 13-19 | | No |
| 114.00 | 09/16/2014 | P | AFFIDAVIT OF COMPLIANCE WITH EMAP | | No |
| 115.00 | 09/30/2014 | P | MOTION FOR DEFAULT FOR FAILURE TO DISCLOSE DEFENSE | | No |

| | | | | |
|---|---|---|---|---|
| 115.86 | 10/16/2014 | C | ORDER<br>RESULT: Granted 10/16/2014 HON DOUGLAS MINTZ | No |
| 116.00 | 09/30/2014 | P | MOTION FOR JUDGMENT-STRICT FORECLOSURE<br>RESULT: Order 6/6/2016 HON DOUGLAS MINTZ | Yes |
| 116.01 | 06/06/2016 | C | ORDER<br>RESULT: Order 6/6/2016 HON DOUGLAS MINTZ | No |
| 116.86 | 10/27/2014 | C | ORDER<br>RESULT: Order 10/27/2014 HON DOUGLAS MINTZ | No |
| 117.00 | 10/14/2014 | D | FORECLOSURE MEDIATION – PETITION FOR REINCLUSION<br>RESULT: Granted 11/10/2014 HON KEVIN TIERNEY | No |
| 117.01 | 11/10/2014 | C | ORDER<br>RESULT: Granted 11/10/2014 HON KEVIN TIERNEY | No |
| 118.00 | 10/20/2014 | P | PRELIMINARY STATEMENT OF DEBT | No |
| 119.00 | 10/23/2014 | P | FORECLOSURE WORKSHEET JD-CV-77 | No |
| 120.00 | 10/23/2014 | P | AFFIDAVIT OF DEBT | No |
| 121.00 | 10/23/2014 | P | AFFIDAVIT RE: ATTORNEY/COUNSEL FEES | No |
| 122.00 | 10/23/2014 | P | OATH OF APPRAISERS<br>Oath & Appraisal | No |
| 123.00 | 11/03/2014 | P | WITHDRAWAL OF MOTION<br>121.00 Affidavit RE: Attorney/Counsel Fees | No |
| 124.00 | 11/04/2014 | P | FORECLOSURE WORKSHEET JD-CV-77 | No |
| 125.00 | 11/04/2014 | P | AFFIDAVIT OF DEBT | No |
| 126.00 | 11/04/2014 | P | AFFIDAVIT RE: ATTORNEY/COUNSEL FEES | No |
| 127.00 | 11/07/2014 | P | FORECLOSURE MEDIATION - OBJECTION JD-CV-95 | No |
| 128.00 | 12/17/2014 | C | FORECLOSURE MEDIATOR'S REPORT | No |
| 129.00 | 12/29/2014 | P | REQUEST TO EXTEND TIME TO RESPOND TO INTERROGATORIES OR PRODUCTION REQ P.B. 13-7(a)(2)/13-10(a)(2) | No |
| 130.00 | 01/05/2015 | D | FORECLOSURE MEDIATION - MOTION FOR MODIFICATION OF MEDIATION PERIODJD-CV-96<br>RESULT: Granted 1/26/2015 HON DOUGLAS MINTZ | No |
| 130.01 | 01/20/2015 | C | ORDER<br>RESULT: Order 1/20/2015 HON DOUGLAS MINTZ | No |
| 130.02 | 01/26/2015 | C | ORDER<br>RESULT: Granted 1/26/2015 HON DOUGLAS MINTZ | No |
| 131.00 | 01/16/2015 | P | FORECLOSURE MEDIATION - OBJECTION JD-CV-95 | No |
| 132.00 | 01/23/2015 | P | OBJECTION TO INTERROGATORIES/PRODUCTION PB 13-8 and 13-10 | No |
| 133.00 | 02/27/2015 | C | FORECLOSURE MEDIATOR'S REPORT | No |
| 134.00 | 03/17/2015 | D | FORECLOSURE MEDIATION - MOTION FOR MODIFICATION OF MEDIATION PERIODJD-CV-96<br>RESULT: Granted 3/30/2015 HON DOUGLAS MINTZ | No |
| 134.01 | 03/30/2015 | C | ORDER<br>RESULT: Granted 3/30/2015 HON DOUGLAS MINTZ | No |
| 135.00 | 04/27/2015 | P | MOTION FOR CONTINUANCE<br>RESULT: Order 4/28/2015 HON DOUGLAS MINTZ | No |
| 135.01 | 04/28/2015 | C | ORDER<br>RESULT: Order 4/28/2015 HON DOUGLAS MINTZ | No |
| 136.00 | 04/27/2015 | P | FORECLOSURE MEDIATION - MOTION FOR MODIFICATION OF MEDIATION PERIODJD-CV-96<br>RESULT: Granted 5/11/2015 HON DOUGLAS MINTZ | No |
| 136.01 | 05/11/2015 | C | ORDER<br>RESULT: Granted 5/11/2015 HON DOUGLAS MINTZ | No |
| 137.00 | 06/25/2015 | P | MOTION FOR CONTINUANCE<br>RESULT: Order 6/26/2015 HON DOUGLAS MINTZ | No |
| 137.01 | 06/26/2015 | C | ORDER<br>RESULT: Order 6/26/2015 HON DOUGLAS MINTZ | No |
| 138.00 | 06/25/2015 | P | FORECLOSURE MEDIATION - MOTION FOR MODIFICATION OF MEDIATION PERIODJD-CV-96<br>RESULT: Granted 7/13/2015 HON DOUGLAS MINTZ | No |
| 138.01 | 07/13/2015 | C | ORDER<br>RESULT: Granted 7/13/2015 HON DOUGLAS MINTZ | No |
| 139.00 | 07/30/2015 | C | FORECLOSURE MEDIATOR'S REPORT | No |

| | | | | |
|---|---|---|---|---|
| 140.00 | 08/14/2015 | D | **FORECLOSURE MEDIATION - MOTION FOR MODIFICATION OF MEDIATION PERIODJD-CV-96**<br>*RESULT:* Granted 8/31/2015 HON DOUGLAS MINTZ | No |
| 140.01 | 08/31/2015 | C | ORDER<br>*RESULT:* Granted 8/31/2015 HON DOUGLAS MINTZ | No |
| 141.00 | 08/27/2015 | P | **FORECLOSURE MEDIATION - OBJECTION JD-CV-95** | No |
| 142.00 | 09/24/2015 | C | **FORECLOSURE MEDIATOR'S REPORT** | No |
| 143.00 | 10/30/2015 | C | **FORECLOSURE MEDIATOR'S FINAL REPORT - MEDIATION PERIOD TERMINATED** | No |
| 144.00 | 05/20/2016 | P | **PRELIMINARY STATEMENT OF DEBT** | No |
| 145.00 | 06/02/2016 | P | **MILITARY AFFIDAVIT**<br>William D. Peters III | No |
| 146.00 | 06/02/2016 | P | **MILITARY AFFIDAVIT**<br>Victoria B. Peters | No |
| 147.00 | 06/02/2016 | P | **FORECLOSURE WORKSHEET JD-CV-77** | No |
| 148.00 | 06/02/2016 | P | **AFFIDAVIT OF DEBT** | No |
| 149.00 | 06/02/2016 | P | **AFFIDAVIT RE: ATTORNEY/COUNSEL FEES** | No |
| 150.00 | 06/02/2016 | P | **OATH OF APPRAISERS**<br>and appraisal | No |
| 151.00 | 06/13/2016 | P | **NOTICE TO ALL PARTIES** | No |
| 152.00 | 09/26/2016 | O | **REPORT**<br>Title Search | No |
| 153.00 | 10/14/2016 | O | **APPRAISAL** | No |
| 154.00 | 10/17/2016 | D | **MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE**<br>*RESULT:* Granted 10/24/2016 HON DOUGLAS MINTZ | Yes |
| 154.01 | 10/24/2016 | C | ORDER<br>*RESULT:* Granted 10/24/2016 HON DOUGLAS MINTZ | No |
| 155.00 | 10/20/2016 | D | **FORECLOSURE MEDIATION – PETITION FOR REINCLUSION** | No |
| 156.00 | 10/21/2016 | D | **WITHDRAWAL OF MOTION** | No |
| 157.00 | 10/21/2016 | D | **FORECLOSURE MEDIATION – PETITION FOR REINCLUSION**<br>*RESULT:* Denied 11/28/2016 HON DOUGLAS MINTZ | No |
| 157.01 | 11/07/2016 | C | ORDER<br>*RESULT:* Off 11/7/2016 HON DOUGLAS MINTZ | No |
| 157.02 | 11/28/2016 | C | ORDER<br>*RESULT:* Denied 11/28/2016 HON DOUGLAS MINTZ | No |
| 158.00 | 10/28/2016 | O | **MOTION FOR COUNSEL FEES**<br>Foreclosure/Motion for Interim Committee Fees, Expenses and Appraisal Fees<br>*RESULT:* Order 11/14/2016 HON ROBERT GENUARIO | No |
| 158.01 | 11/14/2016 | C | ORDER<br>*RESULT:* Order 11/14/2016 HON ROBERT GENUARIO | No |
| 159.00 | 11/01/2016 | P | **NOTICE TO ALL PARTIES** | No |
| 160.00 | 11/03/2016 | P | **FORECLOSURE MEDIATION - OBJECTION JD-CV-95**<br>*RESULT:* Sustained 11/28/2016 HON DOUGLAS MINTZ | No |
| 160.01 | 11/07/2016 | C | ORDER<br>*RESULT:* Off 11/7/2016 HON DOUGLAS MINTZ | No |
| 160.02 | 11/28/2016 | C | ORDER<br>*RESULT:* Sustained 11/28/2016 HON DOUGLAS MINTZ | No |
| 161.00 | 12/05/2016 | C | **FORECLOSURE MEDIATOR'S REPORT** | No |
| 162.00 | 01/19/2017 | C | **FORECLOSURE MEDIATOR'S REPORT** | No |
| 163.00 | 01/24/2017 | P | **FORECLOSURE MEDIATION - OBJECTION JD-CV-95**<br>*RESULT:* Off 2/6/2017 HON DOUGLAS MINTZ | No |
| 163.01 | 02/06/2017 | C | ORDER<br>*RESULT:* Off 2/6/2017 HON DOUGLAS MINTZ | No |
| 163.02 | 02/06/2017 | C | **FORECLOSURE MEDIATION TIME PERIOD EXPIRED** | No |
| 164.00 | 01/27/2017 | O | **REPORT**<br>Title Search | No |
| 165.00 | 02/14/2017 | D | **MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE**<br>*RESULT:* Granted 2/21/2017 HON DOUGLAS MINTZ | Yes |
| 165.01 | 02/21/2017 | C | ORDER<br>*RESULT:* Granted 2/21/2017 HON DOUGLAS MINTZ | No |

| | | | | |
|---|---|---|---|---|
| 166.00 | 02/28/2017 | O | **MOTION FOR COUNSEL FEES**<br>Motion for Interim Fees, Expenses and Appraisal Fees<br>*RESULT:* Granted 3/21/2017 HON DOUGLAS MINTZ | No |
| 166.01 | 03/21/2017 | C | ORDER<br>*RESULT:* Granted 3/21/2017 HON DOUGLAS MINTZ | No |
| 167.00 | 03/01/2017 | P | **NOTICE TO ALL PARTIES** | No |
| 168.00 | 02/23/2017 | C | **FORECLOSURE MEDIATOR'S FINAL REPORT - MEDIATION PERIOD TERMINATED** | No |
| 169.00 | 04/03/2017 | O | **REPORT**<br>TITLE SEARCH | No |
| 170.00 | 04/24/2017 | O | **REPORT OF APPRAISERS** | No |
| 171.00 | 05/01/2017 | D | **MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE**<br>*RESULT:* Granted 5/8/2017 HON DOUGLAS MINTZ | Yes |
| 171.01 | 05/08/2017 | C | ORDER<br>*RESULT:* Granted 5/8/2017 HON DOUGLAS MINTZ | No |
| 172.00 | 05/05/2017 | P | **OBJECTION TO MOTION**<br>to open judgment | No |
| 173.00 | 05/11/2017 | O | **MOTION FOR ORDER**<br>Motion for Interim Committee Fees, Expenses and Appraisal Fees<br>*RESULT:* Order 5/30/2017 HON DOUGLAS MINTZ | No |
| 173.01 | 05/30/2017 | C | ORDER<br>*RESULT:* Order 5/30/2017 HON DOUGLAS MINTZ | No |
| 174.00 | 05/18/2017 | P | **NOTICE TO ALL PARTIES** | No |
| 175.00 | 06/20/2017 | O | **REPORT**<br>TITLE SEARCH | No |
| 176.00 | 07/03/2017 | D | **MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE**<br>*RESULT:* Granted 7/10/2017 HON DOUGLAS MINTZ | Yes |
| 176.01 | 07/10/2017 | C | ORDER<br>*RESULT:* Granted 7/10/2017 HON DOUGLAS MINTZ | No |
| 177.00 | 07/10/2017 | O | **APPRAISAL** | No |
| 178.00 | 07/13/2017 | O | **MOTION TO AWARD INTERIM COMMITTEE FEE/EXPENSES**<br>*RESULT:* Order 8/1/2017 HON DOUGLAS MINTZ | No |
| 178.01 | 08/01/2017 | C | ORDER<br>*RESULT:* Order 8/1/2017 HON DOUGLAS MINTZ | No |
| 179.00 | 07/19/2017 | P | **NOTICE TO ALL PARTIES** | No |
| 180.00 | 09/19/2017 | O | **REPORT**<br>TITLE SARCH | No |
| 181.00 | 10/06/2017 | D | **MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE**<br>*RESULT:* Granted 10/16/2017 HON A MOTTOLESE | Yes |
| 181.01 | 10/16/2017 | C | ORDER<br>*RESULT:* Granted 10/16/2017 HON A MOTTOLESE | No |
| 182.00 | 10/20/2017 | O | **MOTION FOR COUNSEL FEES**<br>Motion for Interim Committee Fees and Expenses<br>*RESULT:* Granted 11/8/2017 HON KEVIN RANDOLPH | No |
| 182.01 | 11/08/2017 | C | ORDER<br>*RESULT:* Granted 11/8/2017 HON KEVIN RANDOLPH | No |
| 183.00 | 10/25/2017 | P | **NOTICE TO ALL PARTIES** | No |
| 184.00 | 12/01/2017 | O | **REPORT**<br>TITLE SEARCH | No |
| 185.00 | 12/07/2017 | D | **MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE**<br>*RESULT:* Granted 1/2/2018 HON KEVIN RANDOLPH | Yes |
| 185.01 | 01/02/2018 | C | ORDER<br>*RESULT:* Granted 1/2/2018 HON KEVIN RANDOLPH | No |
| 186.00 | 12/11/2017 | P | **MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE** | Yes |
| 187.00 | 12/12/2017 | P | **WITHDRAWAL OF MOTION**<br>186.00- Motion to open judgment and extend sale date | No |
| 188.00 | 12/27/2017 | O | **REPORT OF APPRAISERS** | No |
| 189.00 | 01/05/2018 | P | **NOTICE TO ALL PARTIES** | No |
| 190.00 | 01/09/2018 | O | **MOTION FOR COUNSEL FEES**<br>Motion for Interim Committee Fees and Expenses | No |
| 191.00 | 02/01/2018 | O | **REPORT**<br>TITLE SEARCH | No |

| 192.00 | 02/07/2018 | D | AFFIDAVIT THAT PARTY IS IN BANKRUPTCY | No |
| 193.00 | 02/13/2018 | P | AFFIDAVIT THAT PARTY IS IN BANKRUPTCY HOW AUTOMATIC STAY IN EFFECT | No |

| Scheduled Court Dates as of 02/23/2018 | | | | |
|---|---|---|---|---|
| FST-CV13-6020732-S - **US BANK NATIONAL ASSOCIATION AS TRUSTEE v. PETERS, III, WILLIAM D Et Al** | | | | |
| **#** | **Date** | **Time** | **Event Description** | **Status** |
| | | | No Events Scheduled | |

Judicial ADR events may be heard in a court that is different from the court where the case is filed. To check location information about an ADR event, select the **Notices** tab on the top of the case detail page.

Matters that appear on the Short Calendar and Family Support Magistrate Calendar are shown as scheduled court events on this page. The date displayed on this page is the date of the calendar.

All matters on a family support magistrate calendar are presumed ready to go forward.

The status of a Short Calendar matter is not displayed because it is determined by markings made by the parties as required by the calendar notices and the civil or family standing orders. Markings made electronically can be viewed by those who have electronic access through the Markings History link on the Civil/Family Menu in E-Services. Markings made by telephone can only be obtained through the clerk's office. If more than one motion is on a single short calendar, the calendar will be listed once on this page. You can see more information on matters appearing on Short Calendars and Family Support Magistrate Calendars by going to the Civil/Family Case Look-Up page and Short Calendars By Juris Number or By Court Location.

Periodic changes to terminology that do not affect the status of the case may be made.

This list does not constitute or replace official notice of scheduled court events.

**Disclaimer:** For civil and family cases statewide, case information can be seen on this website for a period of time, from one year to a maximum period of ten years, after the disposition date. If the Connecticut Practice Book Sections 7-10 and 7-11 give a shorter period of time, the case information will be displayed for the shorter period. Under the Federal Violence Against Women Act of 2005, cases for relief from physical abuse, foreign protective orders, and motions that would be likely to publicly reveal the identity or location of a protected party may not be displayed and may be available only at the courts.

Attorneys | Case Look-up | Courts | Directories | Educational Resources | E-Services | FAQs | Juror Information | News & Updates | Opportunities | Self-Help | Home

Common Legal Terms | Contact Us | Site Map | Website Policies

Copyright © 2018, State of Connecticut Judicial Branch

Page Created on 2/26/2018 at 10:32:36 AM

*Exhibit H*

ORDER   407901

DOCKET NO: FSTCV136020732S

SUPERIOR COURT

US BANK NATIONAL ASSOCIATION AS
TRUSTEE
  V.
PETERS, III, WILLIAM D Et Al

JUDICIAL DISTRICT OF STAMFORD
  AT STAMFORD

6/6/2016

## ORDER

ORDER REGARDING:
09/30/2014 116.00 MOTION FOR JUDGMENT-STRICT FORECLOSURE

The foregoing, having been heard by the Court, is hereby:

ORDER:

JUDGMENT DATE:
Monday, June 06, 2016

Notice of Judgment of Foreclosure by Sale
Property Address: 32 Stanton Road Darien, CT 06820
The Committee is ordered to upload pictures of the property on the Judicial website and include a
picture of the property in the newspaper ad. The appraiser is ordered to do an interior appraisal of the
property.

Judgment of Foreclosure by Sale is hereby entered as follows:
Debt: $764,321.72
Attorney Fees: $3,900.00
Total: $768,221.72
Appraisal Fee: $600.00
Title Search Fee: $225.00
Fair Market Value: $1,300,000.00

The Sale Date is: Saturday, October 29, 2016
Terms of the Sale: 12:00 noon on the premises.
Deposit Amount: $130,000.00 Deposit to be paid by bank or certified check only.
Committee Appointed: DORIS KNAPP, 264 CHEESE SPRING ROAD, WILTON, CT 06897
Ordered in accordance with the Statewide Standing Orders(JD-CV-79) and Uniform Procedures for
Foreclosure by Sale Matters(JD-CV-81).
Independent Appraiser: Rome Lillicraf, Rome Home Services, LLC., 10 Edgewood Ave, Trumbull, CT
06611
Return of Appraisal by: Wednesday, October 19, 2016
Deposit not required if Plaintiff is the successful bidder. The Plaintiff may submit a bid via fax.
No fees or expenses prior to: Wednesday, September 14, 2016
Sign to be posted no earlier than : Thursday, September 29, 2016
Sign to be posted no later than : Sunday, October 09, 2016

Publication in Stamford Advocate on: 10/21/2016, 10/28/2016
Ad to be posted on Judicial Website.
Plaintiff's Atty: BENDETT & MCHUGH PC, 160 FARMINGTON AVE., FARMINGTON, CT 06032
Copies sent Wednesday, June 08, 2016 to:
DORIS KNAPP (Committee)

FSTCV136020732S   6/6/2016

Judicial Notice (JDNO) was sent regarding this order.

407901
_____

Judge: DOUGLAS C MINTZ
Processed by: Catherine Cannizzaro

*Exhibit I*

ORDER   409106

DOCKET NO: FSTCV136020732S

SUPERIOR COURT

US BANK NATIONAL ASSOCIATION AS
TRUSTEE
  V.
PETERS, III, WILLIAM D Et Al

JUDICIAL DISTRICT OF STAMFORD
  AT STAMFORD

11/10/2014

<u>ORDER</u>

ORDER REGARDING:
10/14/2014 117.00 FORECLOSURE MEDIATION – PETITION FOR REINCLUSION

The foregoing, having been heard by the Court, is hereby:

ORDER: GRANTED

The parties are ordered to participate in an additional mediation on after 12/16/2014 and or before
12/19/2014. A full, updated financial package is to be submitted to the Plaintiff on or before 11/19/2014.

Judicial Notice (JDNO) was sent regarding this order.

409106
—————————————————————

Judge: KEVIN TIERNEY
Processed by: William Tone

ORDER    407901

DOCKET NO: FSTCV136020732S

US BANK NATIONAL ASSOCIATION AS
TRUSTEE
   V.
PETERS, III, WILLIAM D Et Al

SUPERIOR COURT

JUDICIAL DISTRICT OF STAMFORD
   AT STAMFORD

10/24/2016

ORDER

ORDER REGARDING:
10/17/2016 154.00 MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE

The foregoing, having been considered by the Court, is hereby:

ORDER: GRANTED

JUDGMENT DATE:
Monday, October 24, 2016

Notice of Judgment of Foreclosure by Sale (as opened and modified)
Property Address: 32 Stanton Road Darien, CT 06820
The Committee is ordered to upload pictures of the property on the Judicial website and include a
picture of the property in the newspaper ad. The appraiser is ordered to do an interior appraisal of the
property.

Judgment of Foreclosure by Sale is hereby entered as follows:
Debt: $764,321.72
Attorney Fees: $3,900.00
Total: $768,221.72
Appraisal Fee: $600.00
Title Search Fee: $225.00
Fair Market Value: $1,300,000.00

The Sale Date is: Saturday, March 04, 2017
Terms of the Sale: 12:00 noon on the premises.
Deposit Amount: $130,000.00 Deposit to be paid by bank or certified check only.
Committee Appointed: DORIS KNAPP, 264 CHEESE SPRING ROAD, WILTON, CT 06897
Ordered in accordance with the Statewide Standing Orders(JD-CV-79) and Uniform Procedures for
Foreclosure by Sale Matters(JD-CV-81).
Independent Appraiser: Rome Lillicraf, Rome Home Services, LLC., 10 Edgewood Ave, Trumbull, CT
06611
Return of Appraisal by: Wednesday, February 22, 2017
Deposit not required if Plaintiff is the successful bidder. The Plaintiff may submit a bid via fax.
No fees or expenses prior to: Wednesday, January 18, 2017
Sign to be posted no earlier than : Thursday, February 02, 2017
Sign to be posted no later than : Sunday, February 12, 2017

Publication in Stamford Advocate on: 2/24/2017, 3/3/2017
Ad to be posted on Judicial Website.
Plaintiff's Atty: BENDETT & MCHUGH PC, 160 FARMINGTON AVE., FARMINGTON, CT 06032
Copies sent Tuesday, October 25, 2016 to:
BENDETT & MCHUGH PC; SETH J ARNOWITZ; GOLDMAN GRUDER & WOODS LLC, DORIS

FSTCV136020732S    10/24/2016

KNAPP (Committee), Rome Lillicraf (Appraiser)

Judicial Notice (JDNO) was sent regarding this order.

407901

Judge: DOUGLAS C MINTZ
Processed by: Amy Melashvili

Exhibit K

ORDER    407901

DOCKET NO: FSTCV136020732S

SUPERIOR COURT

US BANK NATIONAL ASSOCIATION AS
TRUSTEE
   V.
PETERS, III, WILLIAM D Et Al

JUDICIAL DISTRICT OF STAMFORD
   AT STAMFORD

11/28/2016

<u>ORDER</u>

ORDER REGARDING:
10/21/2016 157.00 FORECLOSURE MEDIATION – PETITION FOR REINCLUSION

The foregoing, having been considered by the Court, is hereby:

ORDER: DENIED

However, using the Court's equitable powers, the parties are ordered to participate in an additional
mediation on or after 12/5/2016 and or before 12/9/2016.

Judicial Notice (JDNO) was sent regarding this order.

407901
_____

Judge: DOUGLAS C MINTZ
Processed by: Amy Melashvili

*Exhibit L*

ORDER   407901

DOCKET NO: FSTCV136020732S

SUPERIOR COURT

US BANK NATIONAL ASSOCIATION AS
TRUSTEE
  V.
PETERS, III, WILLIAM D Et Al

JUDICIAL DISTRICT OF STAMFORD
  AT STAMFORD

10/24/2016

ORDER

ORDER REGARDING:
10/17/2016 154.00 MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE

The foregoing, having been considered by the Court, is hereby:

ORDER: GRANTED

JUDGMENT DATE:
Monday, October 24, 2016

Notice of Judgment of Foreclosure by Sale (as opened and modified)
Property Address: 32 Stanton Road Darien, CT 06820
The Committee is ordered to upload pictures of the property on the Judicial website and include a
picture of the property in the newspaper ad. The appraiser is ordered to do an interior appraisal of the
property.

Judgment of Foreclosure by Sale is hereby entered as follows:
Debt: $764,321.72
Attorney Fees: $3,900.00
Total: $768,221.72
Appraisal Fee: $600.00
Title Search Fee: $225.00
Fair Market Value: $1,300,000.00

The Sale Date is: Saturday, March 04, 2017
Terms of the Sale: 12:00 noon on the premises.
Deposit Amount: $130,000.00 Deposit to be paid by bank or certified check only.
Committee Appointed: DORIS KNAPP, 264 CHEESE SPRING ROAD, WILTON, CT 06897
Ordered in accordance with the Statewide Standing Orders(JD-CV-79) and Uniform Procedures for
Foreclosure by Sale Matters(JD-CV-81).
Independent Appraiser: Rome Lillicraf, Rome Home Services, LLC., 10 Edgewood Ave, Trumbull, CT
06611
Return of Appraisal by: Wednesday, February 22, 2017
Deposit not required if Plaintiff is the successful bidder. The Plaintiff may submit a bid via fax.
No fees or expenses prior to: Wednesday, January 18, 2017
Sign to be posted no earlier than : Thursday, February 02, 2017
Sign to be posted no later than : Sunday, February 12, 2017

Publication in Stamford Advocate on: 2/24/2017, 3/3/2017
Ad to be posted on Judicial Website.
Plaintiff's Atty: BENDETT & MCHUGH PC, 160 FARMINGTON AVE., FARMINGTON, CT 06032
Copies sent Tuesday, October 25, 2016 to:
BENDETT & MCHUGH PC; SETH J ARNOWITZ; GOLDMAN GRUDER & WOODS LLC, DORIS

KNAPP (Committee), Rome Lillicraf (Appraiser)

Judicial Notice (JDNO) was sent regarding this order.

407901

Judge: DOUGLAS C MINTZ
Processed by: Amy Melashvili

ORDER    407901

DOCKET NO: FSTCV136020732S

SUPERIOR COURT

US BANK NATIONAL ASSOCIATION AS
TRUSTEE
  V.
PETERS, III, WILLIAM D Et Al

JUDICIAL DISTRICT OF STAMFORD
  AT STAMFORD

2/21/2017

ORDER

ORDER REGARDING:
02/14/2017 165.00 MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE

The foregoing, having been considered by the Court, is hereby:

ORDER: GRANTED

Notice of Judgment of Foreclosure by Sale (as opened and modified)
Property Address: 32 Stanton Road Darien, CT 06820
The Committee is ordered to upload pictures of the property on the Judicial website and include a
picture of the property in the newspaper ad. The appraiser is ordered to do an interior appraisal of the
property.

Judgment of Foreclosure by Sale is hereby entered as follows:
Debt: $764,321.72
Attorney Fees: $3,900.00
Total: $768,221.72
Appraisal Fee: $600.00
Title Search Fee: $225.00
Fair Market Value: $1,300,000.00

The Sale Date is: Saturday, May 13, 2017
Terms of the Sale: 12:00 noon on the premises.
Deposit Amount: $130,000.00 Deposit to be paid by bank or certified check only.
Committee Appointed: DORIS KNAPP, 264 CHEESE SPRING ROAD, WILTON, CT 06897
Ordered in accordance with the Statewide Standing Orders(JD-CV-79) and Uniform Procedures for
Foreclosure by Sale Matters(JD-CV-81).
Independent Appraiser: Rome Lillicraf, Rome Home Services, LLC., 10 Edgewood Ave, Trumbull, CT
06611
Return of Appraisal by: Wednesday, May 03, 2017
Deposit not required if Plaintiff is the successful bidder. The Plaintiff may submit a bid via fax.
No fees or expenses prior to: Wednesday, March 29, 2017
Sign to be posted no earlier than : Thursday, April 13, 2017
Sign to be posted no later than : Sunday, April 23, 2017

Publication in Stamford Advocate on: 5/5/2017, 5/12/2017
Ad to be posted on Judicial Website.
Plaintiff's Atty: BENDETT & MCHUGH PC, 160 FARMINGTON AVE., FARMINGTON, CT 06032
Copies sent Tuesday, February 21, 2017 to:
BENDETT & MCHUGH PC; SETH J ARNOWITZ; GOLDMAN GRUDER & WOODS LLC, DORIS
KNAPP (Committee), Rome Lillicraf (Appraiser)

Judicial Notice (JDNO) was sent regarding this order.

407901

Judge: DOUGLAS C MINTZ
Processed by: Amy Melashvili

ORDER    407901

DOCKET NO: FSTCV136020732S

US BANK NATIONAL ASSOCIATION AS
TRUSTEE
   V.
PETERS, III, WILLIAM D Et Al

SUPERIOR COURT

JUDICIAL DISTRICT OF STAMFORD
   AT STAMFORD

5/8/2017

ORDER

ORDER REGARDING:
05/01/2017 171.00 MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE

The foregoing, having been considered by the Court, is hereby:

ORDER: GRANTED

Notice of Judgment of Foreclosure by Sale (as opened and modified)
Property Address: 32 Stanton Road Darien, CT 06820
The Committee is ordered to upload pictures of the property on the Judicial website and include a
picture of the property in the newspaper ad. The appraiser is ordered to do an interior appraisal of the
property.

Judgment of Foreclosure by Sale is hereby entered as follows:
Debt: $764,321.72
Attorney Fees: $3,900.00
Total: $768,221.72
Appraisal Fee: $600.00
Title Search Fee: $225.00
Fair Market Value: $1,300,000.00

The Sale Date is: Saturday, July 22, 2017
Terms of the Sale: 12:00 noon on the premises.
Deposit Amount: $130,000.00 Deposit to be paid by bank or certified check only.
Committee Appointed: DORIS KNAPP, 264 CHEESE SPRING ROAD, WILTON, CT 06897
Ordered in accordance with the Statewide Standing Orders(JD-CV-79) and Uniform Procedures for
Foreclosure by Sale Matters(JD-CV-81).
Independent Appraiser: Rome Lillicraf, Rome Home Services, LLC., 10 Edgewood Ave, Trumbull, CT
06611
Return of Appraisal by: Wednesday, July 12, 2017
Deposit not required if Plaintiff is the successful bidder. The Plaintiff may submit a bid via fax.
No fees or expenses prior to: Wednesday, June 07, 2017
Sign to be posted no earlier than : Thursday, June 22, 2017
Sign to be posted no later than : Sunday, July 02, 2017

Publication in Stamford Advocate on: 7/14/2017, 7/21/2017
Ad to be posted on Judicial Website.
Plaintiff's Atty: BENDETT & MCHUGH PC, 160 FARMINGTON AVE., FARMINGTON, CT 06032
Copies sent Friday, May 12, 2017 to:
BENDETT & MCHUGH PC; SETH J ARNOWITZ; GOLDMAN GRUDER & WOODS LLC, DORIS
KNAPP (Committee), Rome Lillicraf (Appraiser)

Judicial Notice (JDNO) was sent regarding this order.

407901

Judge: DOUGLAS C MINTZ
Processed by: Amy Melashvili

ORDER    407901

DOCKET NO: FSTCV136020732S

US BANK NATIONAL ASSOCIATION AS
TRUSTEE
   V.
PETERS, III, WILLIAM D Et Al

SUPERIOR COURT

JUDICIAL DISTRICT OF STAMFORD
   AT STAMFORD

7/10/2017

<u>ORDER</u>

ORDER REGARDING:
07/03/2017 176.00 MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE

The foregoing, having been considered by the Court, is hereby:

ORDER: GRANTED

Notice of Judgment of Foreclosure by Sale (as opened and modified)
Property Address: 32 Stanton Road Darien, CT 06820
The Committee is ordered to upload pictures of the property on the Judicial website and include a
picture of the property in the newspaper ad. The appraiser is ordered to do an interior appraisal of the
property.

Judgment of Foreclosure by Sale is hereby entered as follows:
Debt: $764,321.72
Attorney Fees: $3,900.00
Total: $768,221.72
Appraisal Fee: $600.00
Title Search Fee: $225.00
Fair Market Value: $1,300,000.00

The Sale Date is: Saturday, October 28, 2017
Terms of the Sale: 12:00 noon on the premises.
Deposit Amount: $130,000.00 Deposit to be paid by bank or certified check only.
Committee Appointed: DORIS KNAPP, 264 CHEESE SPRING ROAD, WILTON, CT 06897
Ordered in accordance with the Statewide Standing Orders(JD-CV-79) and Uniform Procedures for
Foreclosure by Sale Matters(JD-CV-81).
Independent Appraiser: Rome Lillicraf, Rome Home Services, LLC., 10 Edgewood Ave, Trumbull, CT
06611
Return of Appraisal by: Wednesday, October 18, 2017
Deposit not required if Plaintiff is the successful bidder. The Plaintiff may submit a bid via fax.
No fees or expenses prior to: Wednesday, September 13, 2017
Sign to be posted no earlier than : Thursday, September 28, 2017
Sign to be posted no later than : Sunday, October 08, 2017

Publication in Stamford Advocate on: 10/20/2017, 10/27/2017
Ad to be posted on Judicial Website.
Plaintiff's Atty: BENDETT & MCHUGH PC, 270 FARMINGTON AVENUE, SUITE 151,
FARMINGTON, CT 06032
Copies sent Monday, July 17, 2017 to:
BENDETT & MCHUGH PC; SETH J ARNOWITZ; GOLDMAN GRUDER & WOODS LLC, DORIS
KNAPP (Committee), Rome Lillicraf (Appraiser)

FSTCV136020732S    7/10/2017

Judicial Notice (JDNO) was sent regarding this order.

407901
_____

Judge: DOUGLAS C MINTZ
Processed by: Amy Melashvili

ORDER   080812

DOCKET NO: FSTCV136020732S

SUPERIOR COURT

US BANK NATIONAL ASSOCIATION AS
TRUSTEE
   V.
PETERS, III, WILLIAM D Et Al

JUDICIAL DISTRICT OF STAMFORD
   AT STAMFORD

10/16/2017

<u>ORDER</u>

ORDER REGARDING:
10/06/2017 181.00 MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE

The foregoing, having been considered by the Court, is hereby:

ORDER: GRANTED

Notice of Judgment of Foreclosure by Sale (as opened and modified)
Property Address: 32 Stanton Road Darien, CT 06820
The Committee is ordered to upload pictures of the property on the Judicial website and include a
picture of the property in the newspaper ad. The appraiser is ordered to do an interior appraisal of the
property.

Judgment of Foreclosure by Sale is hereby entered as follows:
Debt: $764,321.72
Attorney Fees: $3,900.00
Total: $768,221.72
Appraisal Fee: $600.00
Title Search Fee: $225.00
Fair Market Value: $1,300,000.00

The Sale Date is: Saturday, January 06, 2018
Terms of the Sale: 12:00 noon on the premises.
Deposit Amount: $130,000.00 Deposit to be paid by bank or certified check only.
Committee Appointed: DORIS KNAPP, 264 CHEESE SPRING ROAD, WILTON, CT 06897
Ordered in accordance with the Statewide Standing Orders(JD-CV-79) and Uniform Procedures for
Foreclosure by Sale Matters(JD-CV-81).
Independent Appraiser: Rome Lillicraf, Rome Home Services, LLC., 10 Edgewood Ave, Trumbull, CT
06611
Return of Appraisal by: Wednesday, December 27, 2017
Deposit not required if Plaintiff is the successful bidder. The Plaintiff may submit a bid via fax.
No fees or expenses prior to: Wednesday, November 22, 2017
Sign to be posted no earlier than : Thursday, December 07, 2017
Sign to be posted no later than : Sunday, December 17, 2017

Publication in Stamford Advocate on: 1/5/2018, 12/29/2018
Ad to be posted on Judicial Website.
Plaintiff's Atty: BENDETT & MCHUGH PC, 270 FARMINGTON AVENUE, SUITE 151,
FARMINGTON, CT 06032
Copies sent Wednesday, October 18, 2017 to:
BENDETT & MCHUGH PC; SETH J ARNOWITZ; GOLDMAN GRUDER & WOODS LLC, DORIS
KNAPP (Committee), Rome Lillicraf (Appraiser)

Judicial Notice (JDNO) was sent regarding this order.

080812
_____

Judge: A WILLIAM MOTTOLESE
Processed by: Amy Melashvili

**Fill in this information to identify your case:**

Debtor 1   William David Peters III
          First Name          Middle Name          Last Name

Debtor 2   Victoria Browning Peters
(Spouse, if filing)   First Name          Middle Name          Last Name

United States Bankruptcy Court for the: _____ District of   CT

Case number _____
(if known)

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13
income as of the following date:

_____
MM / DD / YYYY

Official Form 106I

# Schedule I: Your Income
12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Employment

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| 1. | **Fill in your employment information.** | | |
| | If you have more than one job, attach a separate page with information about additional employers. | | |
| | Include part-time, seasonal, or self-employed work. | | |
| | Occupation may include student or homemaker, if it applies. | | |

| | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|
| Employment status | ☑ Employed  ☐ Not employed | ☐ Employed  ☑ Not employed |
| Occupation | Consultant | |
| Employer's name | William D. Peters III | |
| Employer's address | 32 Stanton Rd | |
| | Number  Street | Number  Street |
| | Darien CT 06820 | |
| | City  State  ZIP Code | City  State  ZIP Code |
| How long employed there? | 8 years | |

## Part 2:    Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2.  $ 10,500 | $ 0 |
| 3. | **Estimate and list monthly overtime pay.** | 3.  + $ 0 | + $ 0 |
| 4. | **Calculate gross income.** Add line 2 + line 3. | 4.  $ 10,500 | $ 0 |

Debtor 1  William David Peters III
     First Name    Middle Name    Last Name

Case number *(if known)*_____

|  | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| Copy line 4 here............................................................➔ | 4. | $ 10,500 | $ 0 |

**5. List all payroll deductions:**

| | | | |
|---|---|---|---|
| 5a. Tax, Medicare, and Social Security deductions | 5a. | $ 1,260 | $ |
| 5b. Mandatory contributions for retirement plans | 5b. | $ 0 | $ |
| 5c. Voluntary contributions for retirement plans | 5c. | $ 0 | $ |
| 5d. Required repayments of retirement fund loans | 5d. | $ 0 | $ |
| 5e. Insurance | 5e. | $ 0 | $ |
| 5f. Domestic support obligations | 5f. | $ 0 | $ |
| 5g. Union dues | 5g. | $ 0 | $ |
| 5h. Other deductions. Specify: _____ | 5h. | + $ 0 | + $ |
| 6. Add the payroll deductions. Add lines 5a + 5b + 5c + 5d + 5e +5f + 5g + 5h. | 6. | $ 1,260 | $ |
| 7. Calculate total monthly take-home pay. Subtract line 6 from line 4. | 7. | $ 9,240 | $ 0 |

**8. List all other income regularly received:**

| | | | |
|---|---|---|---|
| 8a. Net income from rental property and from operating a business, profession, or farm<br>Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0 | $ 0 |
| 8b. Interest and dividends | 8b. | $ 0 | $ 0 |
| 8c. Family support payments that you, a non-filing spouse, or a dependent regularly receive<br>Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0 | $ 0 |
| 8d. Unemployment compensation | 8d. | $ 0 | $ 0 |
| 8e. Social Security | 8e. | $ 0 | $ 0 |
| 8f. Other government assistance that you regularly receive<br>Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.<br>Specify: _____ | 8f. | $ 0 | $ |
| 8g. Pension or retirement income | 8g. | $ 0 | $ |
| 8h. Other monthly income. Specify: _____ | 8h. | + $ | + $ |
| 9. Add all other income. Add lines 8a + 8b + 8c + 8d + 8e + 8f +8g + 8h. | 9. | $ 0 | $ |

| | | | | | |
|---|---|---|---|---|---|
| 10. Calculate monthly income. Add line 7 + line 9.<br>Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | 10. | $ 9,240 | + | $ 0 | = $ 9,240 |

**11.** State all other regular contributions to the expenses that you list in *Schedule J.*

Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.

Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*

Specify: _____        11. + $ 0

**12.** Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income.

Write that amount on the *Summary of Your Assets and Liabilities and Certain Statistical Information,* if it applies    12. $ 9,240

**Combined monthly income**

**13.** Do you expect an increase or decrease within the year after you file this form?

☐ No.

☒ Yes. Explain: INCREASE IN Consulting Fees AND Commissions

**Fill in this information to identify your case:**

Debtor 1 _William David Peters III_
First Name    Middle Name    Last Name

Debtor 2 _Victoria Browning Peters_
(Spouse, if filing) First Name    Middle Name    Last Name

United States Bankruptcy Court for the: _____ District of _CT_

Case number _____
(If known)

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13
expenses as of the following date:

_____
MM / DD / YYYY

Official Form 106J

# Schedule J: Your Expenses

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Your Household

1. **Is this a joint case?**

   ☐ No.  Go to line 2.
   ☒ Yes. **Does Debtor 2 live in a separate household?**

   ☒ No
   ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household of Debtor 2.*

2. **Do you have dependents?**

   Do not list Debtor 1 and Debtor 2.

   Do not state the dependents' names.

   ☐ No
   ☒ Yes. Fill out this information for each dependent..........................

   | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
   |---|---|---|
   | _SON_ | _19_ | ☐ No  ☒ Yes |
   | _____ | _____ | ☐ No  ☐ Yes |
   | _____ | _____ | ☐ No  ☐ Yes |
   | _____ | _____ | ☐ No  ☐ Yes |
   | _____ | _____ | ☐ No  ☐ Yes |

3. **Do you have your expenses include expenses of people other than yourself and your dependents?**

   ☒ No
   ☐ Yes

## Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J,* check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

|  | Your expenses |
|---|---|
| 4. The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. $ _3,688_ |
| **If not included in line 4:** | |
| 4a. Real estate taxes | 4a. $ _0_ |
| 4b. Property, homeowner's, or renter's insurance | 4b. $ _0_ |
| 4c. Home maintenance, repair, and upkeep expenses | 4c. $ _200_ |
| 4d. Homeowner's association or condominium dues | 4d. $ _0_ |

Debtor 1    William David Peters IV

First Name    Middle Name    Last Name

Case number (if known)_____

| | | Your expenses |
|---|---|---|

5. **Additional mortgage payments for your residence,** such as home equity loans    5.    $ 2700

6. **Utilities:**

   6a. Electricity, heat, natural gas    6a.    $ 350

   6b. Water, sewer, garbage collection    6b.    $ 25

   6c. Telephone, cell phone, Internet, satellite, and cable services    6c.    $ 350

   6d. Other. Specify: Cell Phone    6d.    $ 320

7. **Food and housekeeping supplies**    7.    $ 700

8. **Childcare and children's education costs**    8.    $ 20

9. **Clothing, laundry, and dry cleaning**    9.    $ 0

10. **Personal care products and services**    10.    $ 0

11. **Medical and dental expenses**    11.    $ 100

12. **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments.    12.    $ 250

13. **Entertainment, clubs, recreation, newspapers, magazines, and books**    13.    $ 0

14. **Charitable contributions and religious donations**    14.    $ 0

15. **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20.

   15a. Life insurance    15a.    $ 0

   15b. Health insurance    15b.    $ 0

   15c. Vehicle insurance    15c.    $ 121

   15d. Other insurance. Specify:_____    15d.    $ _____

16. **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: Auto / Sewer Tax    16.    $ 123

17. **Installment or lease payments:**

   17a. Car payments for Vehicle 1    17a.    $ 0

   17b. Car payments for Vehicle 2    17b.    $ 0

   17c. Other. Specify:_____    17c.    $ 0

   17d. Other. Specify:_____    17d.    $ 0

18. **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).**    18.    $ 0

19. **Other payments you make to support others who do not live with you.** Specify: Student Loan    19.    $ 500

20. **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.***

   20a. Mortgages on other property    20a.    $ 0

   20b. Real estate taxes    20b.    $ 0

   20c. Property, homeowner's, or renter's insurance    20c.    $ 0

   20d. Maintenance, repair, and upkeep expenses    20d.    $ 0

   20e. Homeowner's association or condominium dues    20e.    $ 0

Debtor 1    William David Peters III

First Name    Middle Name    Last Name

Case number (if known)_____

---

21. **Other.** Specify: Personal Loan    21. +$ 505

22. **Calculate your monthly expenses.**

    22a. Add lines 4 through 21.    22a. $ 9,752

    22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2    22b. $ 0

    22c. Add line 22a and 22b. The result is your monthly expenses.    22c. $ 9,752

23. **Calculate your monthly net income.**

    23a. Copy line 12 (*your combined monthly income*) from *Schedule I*.    23a. $ 9,240

    23b. Copy your monthly expenses from line 22c above.    23b. –$ 9,752

    23c. Subtract your monthly expenses from your monthly income.
    The result is your *monthly net income*.    23c. $ 512

---

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

    For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

    ☐ No.

    ☒ Yes.    Explain here:    Modification of 1st and 2nd Mortgage and Elimination of Personal Loan.

---

**EXHIBIT N**

| Home price | $846,710.18 |

Down payment

0.000 %

○ %  ○ $

| Loan term | 25 |

○ Months

● Years

| Interest rate | 5.250 % |

☐ Show payment schedule

COMPUTE

Your payment will be $5,073.89.